# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

**PCL CIVIL CONSTRUCTORS, INC.**     **CIVIL ACTION NO. 5:19-CV-00195**

**VERSUS**                           **JUDGE TERRY A. DOUGHTY**

**F.J. BURNELL, INC.**               **MAG. JUDGE MARK L. HORNSBY**

## RULING

Plaintiff PCL Civil Constructors, Inc., ("PCL") sued Defendant F.J. Burnell, Inc., ("Burnell") for breach of contract. Pending here is PCL's Motion for Partial Summary Judgment [Doc. No. 15]. Burnell has filed an opposition [Doc. No. 19]. PCL has filed a reply to the opposition [Doc. No. 20].

For the following reasons, the Motion for Partial Summary Judgment is **GRANTED.**

## I.     FACTS

PCL entered into a Prime Contract dated June 23, 2014, with the Louisiana Department of Transportation and Development ("LADOTD"), to furnish certain material, labor, and services necessary for the construction of a road project related to Interstate 49 in Caddo Parish, Louisiana ("the Project").

PCL entered into a Subcontract Agreement ("the Subcontract") with Burnell in the original amount of $9,836,247.40, whereby Burnell was required to perform a certain scope of the Prime Contract work. With additional revisions that changed the scope of work, the final Subcontract sum totaled $10,012,279.55. With certain back charges claimed by PCL in the amount of $351,656.88, the final revised Subcontract sum was $9,660,622.67.

PCL contends that, mainly because of Burnell's failure to pay its subcontractors and suppliers, PCL was forced to make total payments of $10,387,461.28 for the work that Burnell was to perform under the Subcontract, rather than the final revised Subcontract sum of $9,660,622.67, a difference of $726,838.61.

On February 15, 2019, PCL filed this lawsuit against Burnell, in which it contends that it is entitled under the provisions of the Subcontract to recover this $726,838.61 in payments above and beyond the revised final Subcontract sum that it made, in addition to other damages for Burnell's alleged breach of the Subcontract, interest, and attorney's fees.

On March 4, 2020, PCL filed the pending motion seeking a partial summary judgment for the $726,838.61. PCL reserves all rights to seek any remaining damages, interest, and attorney's fees at trial.

Burnell responds that most, if not all, of the added expenses claimed by PCL were caused by early delays in the project for which Burnell is not responsible.

The motion is fully briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A

party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248.)

### B.     Analysis

Under Louisiana law, the contract is "the law between the parties" and "is read for plain meaning." *In re Liljeberg Enters., Inc*., 304 F.3d 410, 439 (5th Cir. 2002) (*quoting Nat'l Union Fire Ins. Co. v. Circle, Inc.,* 915 F.2d 986, 989 (5th Cir. 1990)). Therefore, when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. *Id*. The Court need not look beyond the four corners of the contract to determine the mutual intent of the parties. *Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246 (5th Cir.1996).

PCL has submitted as summary judgment evidence the Affidavit of Dustin Guszkiewicz, PCL's Project Manager for the Project. [Doc. No. 15-4]. Attached to the Affidavit as Exhibit "A" is a copy of the Subcontract. Exhibit "B" establishes that additional revisions changed the scope of the work, making the final Subcontract sum total $10,012,279.55; and, that certain back charges in the amount of $351,656.88 resulted in the final revised Subcontract sum to be $9,660,622.67.

Exhibit C to the Guszkiewicz Affidavit is a spreadsheet listing the payments made by PCL totaling $10,387,461.28 for the work Burnell was to perform under the Subcontract and establishing that PCL has expended $726,838.61 beyond the revised Subcontract sum of $9,660,622.67.

Exhibit D establishes that, in some instances, liens had been filed and/or demands for payment had been made by Burnell's subcontractors or suppliers for certain amounts that Burnell was responsible for paying.

PCL additionally attaches portions of the deposition of Grover W. Netherton ("Netherton"), owner of Burnell, to show that he acknowledged PCL's contractual right to assert back charges in its deposition and further acknowledged that the contractual right was never waived or modified. [Doc. Nos. 15-5,6].

PCL points to specific provisions of the Subcontract which give it a contractual right to back charge Burnell and to recover certain monies expended by PCL from Burnell. For example, under Article 5 of the Uniform Conditions of Subcontract ("the Uniform Conditions"), PCL has the unilateral right to deduct the costs of work it performed to remediate defective work performed by Burnell if Burnell fails to remedy the deficiency. [Doc. No. 15-4, pp 13,14]. Under Article 6.4 of the Uniform Conditions, PCL has the unilateral right to deduct its costs of

clean-up if, after notice, Burnell fails or refuses to perform the clean-up work itself. [*Id*., p. 14]. Under Article 9 of the Uniform Conditions, PCL is empowered to withhold and/or back charge Burnell for a variety of enumerated reasons. [Id., pp. 15, 16].

Also, Article 9 of the Uniform Conditions provides that Burnell agreed to timely pay all amounts due its sub-subcontractors and suppliers, and that PCL could make payment to Burnell by check payable jointly to Burnell and its sub-subcontractors, suppliers, sureties, and/or governmental agencies when PCL, "in its sole discretion," determined such joint payment was necessary to protect PCL or LADOTD from claims. [*Id*.].

Finally, under Article 21.1.2 of the Uniform Conditions to Subcontract, if Burnell triggered any of the default conditions outlined in Article 21.1 of the Uniform Conditions to Subcontract, then PCL had the unilateral power --after notice to Burnell --to cure the default at Burnell's cost with a 15% fee, and deduct the cost from the Subcontract sum. [*Id*., p. 22].

In sum, PCL has provided summary judgment evidence establishing its contractual rights, establishing the payments made by PCL totaling $10,387,461.28 for the work Burnell was to perform under the Subcontract, and establishing that PCL has expended $726,838.61 beyond the revised Subcontract sum of $9,660,622.67.

PCL asserts that, as there is no dispute as to the original Subcontract amount of $9,836,247.40, no dispute as to the final Subcontract sum total of $10,012,279.55, no dispute as to PCL's unilateral legal right to withhold and/or back charge Burnell $351,656.88, and no dispute as to PCL's total payment of $10,387,461.28 for work under Burnell's scope, then, as a matter of contractual interpretation, the Court should grant a partial summary judgment in favor of PCL in the amount of $726,838.61.

In its opposition, Burnell does not dispute the revised Subcontract sum, it does not dispute

5

PCL's right to back charge Burnell, and it does not dispute PCL's contractual right to recoup the payments made to Burnell's subcontractors and suppliers from Burnell. Instead, Burnell alleges that the added expenses claimed by PCL ($726,838.61) were mainly incurred because of changes to the concrete surface testing requirements, which increased the costs of the project, and for which Burnell is not responsible.

Specifically, Burnell contends that, during a delay period, the LADOTD changed their requirements for the testing of concrete pavement, which increased the test timing and costs. Thus, according to Burnell, a significant portion of the expenses sought by PCL were incurred complying with the LADOTD's new pavement requirements and were not caused by Burnell. In support of its contentions, Burnell offers the Affidavit of Netherton, owner of Burnell. [Doc. No. 19-2].

Burnell concludes that, because most of the extra expenses were caused by the changes imposed by the LADOTD for which Burnell is not responsible, PCL's Motion for Partial Summary Judgment should be denied.

PCL responds that Burnell's allegations are vague and insufficient to meet Burnell's burden to oppose a motion for partial summary judgment and are also, as a matter of law, irrelevant to PCL's summary judgment motion. PCL further responds that the Netherton Affidavit is self-serving, inflated with conclusory allegations, and cites to no documentary evidence to support those allegations.

PCL contends that Burnell's assertion that the LADOTD's alleged decision to change the testing requirements caused project delays and increased project costs is irrelevant for purposes of this motion because it is merely a pass-through claim under the Subcontract. Article 12.4 of the Subcontract outlines such claims, which include DOTD's decision to change the testing requirements:

> If [Burnell] is unsatisfied with any proposed Revision or Construction Change Directive, or otherwise has a claim for which [LADOTD] is or may be responsible, [PCL], upon [Burnell's] timely request and at [Burnell's] sole expense, may assist [Burnell] in presenting its claims to [LADOTD].

[Doc. No. 15-4, p.18]. PCL further asserts that the Subcontract provides that when PCL submits a pass-through claim to LADOTD on behalf of Burnell, PCL acts "solely as a conduit for such claim and assumes no responsibility or liability." [*Id*.] Here, Burnell admits that it considered the LADOTD's testing change a pass-through claim. [Burnell's 30(6)(B) Deposition, Doc. No. 20-1]. PCL concludes, as such, Burnell's attempt to transform its pass-through claim of LADOTD's change in equipment testing to a genuine issue of material fact to defeat PCL's summary judgment is misplaced.

The Court finds that PCL has met its initial burden by producing sufficient evidence to support its claims. The burden is then on Burnell to raise a genuine issue of material fact for trial. The Court finds that Burnell has failed to meet that burden. First, Netherton's Affidavit is not sufficient to establish a genuine issue of material fact. "A party's own testimony is often 'self-serving,' but we do not exclude it as incompetent for that reason alone. . . . Instead, *an affidavit based on personal knowledge and containing factual assertions* suffices to create a fact issue, even if the affidavit is arguably self-serving." *C.R. Pittman Const. Co., Inc. v. National Fire Ins. Co. of Hartford*, 453 Fed. App'x. 439, 443 (5th Cir. 2011). (emphasis added).

The Netherton Affidavit *asserts* that various factors either delayed the project or increased project costs; but it does not attach any documentation to support such an assertion. There is nothing in the Affidavit to indicate it is based on Netherton's personal knowledge. In addition, the Netherton Affidavit offers his "opinion" rather than any empirical data, calculation, or deposition testimony.

By way of contrast, the affidavit PCL submitted in support of its motion included over sixty (60) pages of documentation to support the facts asserted, whereas the Netherton Affidavit includes no documentation at all. As such, the Netherton Affidavit alone cannot defeat PCL's summary judgment.

Secondly, assuming *arguendo* these deficiencies in Netherton's Affidavit do not exist, PCL is nevertheless entitled to summary judgment because Burnell does not dispute PCL's arguments that it has the right to recover the amount of $726,838.61 under the express provisions of the Subcontract. Burnell makes allegations that most of the extra expenses were caused by weather delays or changes imposed by the DOTD; however, Burnell points to no provisions in the Subcontract which would allow it to shift the responsibility of bearing these alleged extra expenses to PCL. Netherton in his deposition acknowledged PCL's contractual right to assert back charges and further acknowledged that the contractual right was never waived or modified. [Doc. Nos. 15-5,6]. As indicated above, the contract is "the law between the parties."

Thirdly, the Court finds that Burnell's argument, that LADOTD's alleged decision to change the testing requirements caused project delays and increased project costs, is irrelevant. Burnell admits that this constituted a pass-through claim which it could have asserted under the Subcontract. Burnell's attempt to transform its pass-through claim of LADOTD's change in equipment testing to a genuine issue of material fact to defeat PCL's summary judgment is misplaced.

In sum, PCL's motion for partial summary judgment seeks to enforce its contractual rights and recoup monies owed to it for payments made to Burnell's subcontractors and suppliers beyond the revised Subcontract sum. Burnell's opposition does not dispute PCL's contractual rights to recover what is seeks. Burnell's unsupported allegations of irrelevant project delays are

insufficient to carry its burden of establishing a genuine issue of material fact which would preclude summary judgment in favor of PCL.

Accordingly, the Court finds that PCL should be granted partial summary judgment in the amount of $726,838.61.

## III. CONCLUSION

For the reasons set forth above, PCL's Motion for Partial Summary Judgment [Doc. No. 15] is **GRANTED**. PCL is granted partial summary judgment in the amount of $726,838.61. PCL's right to seek any remaining damages, interest, and attorney's fees at trial is reserved.

MONROE, LOUISIANA, this 9th day of April, 2020.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**