UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

PCL CIVIL CONSTRUCTORS, INC.          CIVIL ACTION NO. 5:19-00195

VERSUS                                JUDGE TERRY A. DOUGHTY

FJ BURNELL, INC.                      MAG. JUDGE MARK L. HORNSBY

OPINION

This is a civil action brought by Plaintiff PCL Civil Constructors, Inc. ("PCL") against Defendant F.J. Burnell, Inc. ("Burnell") for breach of contract. It involves a construction dispute concerning a highway project known as "I-49 Segment K –Phase to, I-220 to Martin Luther King Drive, Route I-49, State Project No.: H.011111.6, Federal Aid Project No.: 0900(503), County: Caddo Parish" (hereinafter, the "Project").

PCL, as the general contractor, entered into a prime contract with the Louisiana Department of Transportation and Development ("LADOTD") to furnish certain material, labor, and services necessary for the construction of the Project. PCL entered into a Subcontract with Burnell whereby Burnell was required to perform certain concrete work on the Project ("the Subcontract").

On February 15, 2019, PCL filed suit against Burnell, asserting claims for (1) recovery of back charges for primarily having to pay Burnell's subcontractors and suppliers that Burnell failed to pay; and (2) damages suffered due to Burnell's acts in delaying the Project.

PCL's claim for recovery of back charges was adjudicated by a prior Ruling of the Court granting PCL's motion for partial summary judgment on April 9, 2020 [Doc. No. 22].

The only claim remaining for trial concerns PCL's claim for delay damages. PCL contends that these delay damages will total $1,306,570.70, including $470,000 for the liquidated damages

imposed by the LADOTD against PCL, and, $836,570.70 for the extended overhead costs incurred by PCL due to the Project delays caused by Burnell and Burnell's breaches of the Subcontract.[1]

Burnell, on the other hand, contends that there were multiple causes for delay on the Project for which Burnell is not solely responsible. Burnell asserts that it is only responsible for the damage it may have caused, and that it is not liable for any other sources of PCL's damages.

A bench trial was held in this matter July 7 - 9, 2020. The Court took the matter under advisement. The Court hereby enters the following findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, the Court hereby adopts it as such, and to the extent that any conclusion of law constitutes a finding of fact, the Court hereby adopts it as such.

## I.    FINDINGS OF FACT

On June 23, 2014, PCL, as the general contractor, entered into a prime contract with the LADOTD, to furnish certain material, labor, and services necessary for the construction of the Project. Burnell entered into a Subcontract with PCL on October 31, 2014, whereby Burnell was required to perform certain concrete work on the Project which included providing all labor, equipment and material associated with the installation of 11" thick mainline and 8" thick shoulder pavement. The Subcontract was in the original amount of $9,836,247.40.

Because of bad weather and Change Orders, extensions of time to complete the Project were granted by the LADOTD to PCL. In turn, PCL granted Burnell every extension of time granted by the LADOTD.

PCL planned the Project pursuant to the critical path method ("CPM") of scheduling using

---

1 In addition, PCL is seeking its attorneys' fees which it contends are recoverable under the Subcontract. After conferring with counsel at the Status Conference conducted on June 16, 2020, the Court determined that this issue will be considered post-trial. [Doc. No. 58].

CPM schedules.   Throughout the Project, PCL provided the LADOTD with monthly schedule updates, critical path graphs, and an activity notebook. The critical path graphs provided the LADOTD with a graphical representation of a prediction of the work on the critical path for the remainder of the Project.

Burnell was required to furnish a schedule and provide monthly schedule updates. Burnell did not provide any schedules for the Project.

Burnell began working on the Project on November 25, 2015. Burnell began pouring concrete in December 2015.

PCL and Burnell worked together to schedule and sequence Burnell's work on the Project. Throughout the Project, PCL in conjunction with Burnell, set requirements for Burnell to achieve certain cubic-yards of concrete placement per week ("Production Requirements") in order to make sure that Burnell's work was in line with Project milestones and Project completion dates. PCL monitored Burnell's production in charts and graphs which were provided to Burnell. PCL also kept track of Burnell's deviation from its Production Requirements.

Burnell failed to meet its production requirements in 2016, 2017, and 2018. Burnell's progress and performance became more important beginning in November 2017 as Burnell's work was on the Project's critical path by then. Thus, any delays by Burnell would delay completion of the Project.

By January 16, 2018, Burnell had 19,500 remaining cubic yards of concrete left to place on the Project. Burnell was told by PCL that its Production Requirement moving forward was 1,000 cubic yards every week for 19.5 week to complete its work on the Project on time.

On January 16, 2018, PCL advised Burnell that its paving activities were on the critical

path and that any delay would result in a delay to the Project. PCL further notified Burnell of its consistent failure to furnish sufficient materials to complete the Project, and that the lack of materials was affecting Burnell's ability to meet the Project's schedule requirements. PCL directed Burnell to do the following:

Provide PCL with a daily report as previously demanded.

Participate wholly in weekly schedule meetings and provide timely updates and input to the weekly look ahead schedules.

Respond to PCL's communications in a timely manner.

Complete the shoulders in areas after mainline paving is completed in a timely manner.

Respond to the work rejected by the LADOTD.

Maintain sufficient quantities of raw materials for concrete batching.

Mobilize equipment to and from the Project in a timely fashion.

Efficiently schedule its resources to perform the work.

Extend paving operations using lights or other means.

Determine if more insulated blankets were needed on the Project in case of cooler weather.

Use any means and methods necessary to increase the weekly average placement of concrete to 1000 cubic yards in order to meet the required schedule.

Increase its work force, accelerate its performance, work overtime, and work Saturdays, Sundays, and holidays to meet the Project schedule.

[PCL Exhibit No. 102]. Burnell either ignored or failed to respond to these requests. As indicated above, due to Burnell's poor performance, PCL ordered Burnell to accelerate its work

4

on the Project to meet the 1,000 cubic yard per week requirement. The 1,000 cubic yard

requirement was achievable as Burnell managed to meet or exceed this requirement for the weeks

ending January 26, 2018; March 9, 2018; and March 16, 2018. Even though the 1000 cubic yard

production requirement was achievable, Burnell continuously failed to meet its requirements for

several weeks, as indicated below:

        a. January 5, 2018-productionwas less than 200cubic yards;

        b. January 12, 2018-productionwas just over 800 cubic yards;

        c. January 19, 2018-productionwas just over 650cubic yards;

        d. February 2, 2018-productionwas just over 948cubic yards;

        e. February 9, 2018-productionwas just over 750cubic yards;

        f. February16, 2018-productionwas just over 200cubic yards;

        g. February 23, 2018-productionwas just over 110cubic yards;

        h. March 2, 2018-productionwas just over 340cubic yards;

        i. March 23, 2018-productionwas just over 652cubic yards;

        j. March 30, 2018-productionwas just over 350cubic yards;

        k. April 6, 2018-productionwas just over 147cubic yards;

        l. April 13,2018-productionwas over 850cubic yards;

        m. April 20, 2018-productionwas only743cubic yards;

        n. April 27, 2018-productionwas only850cubic yards;

        o. May 4, 2018-productionwas only894cubic yards;

        p. May 11, 2018-productionwas only860cubic yards;

        q. May 18, 2018-productionwas only494cubic yards;

r. May 25, 2018-productionwas only735cubic yards;

s. June 22, 2018 –production only 686 cubic yards;

t. June 29, 2018 –production only 603 cubic yards;

u. July 6, 2018 –production only 812 cubic yards;

v. July 13, 2018 –production only 672 cubic yards;

w. July 20, 2018 –production only 660 cubic yards;

x. July 27, 2018 –production only 456 cubic yards;

y. August 3, 2018 –production only 910 cubic yards;

z. August 17, 2018 –production only 410 cubic yards;

aa. August 3, 2018 –production only 910 cubic yards;

bb. August 24, 2018 –production only 270 cubic yards; and

cc. August 31, 2018 –production only 318 cubic yards.

Burnell was in financial distress during the Project.   Burnell's bookkeeper was terminated during the Project and charged by the District Attorney with theft.  Burnell could not pay its payroll taxes and had a tax lien against it for one and a half million dollars.  PCL had to make checks jointly payable to Burnell and its suppliers,  so that Burnell would not run out of supplies and materials necessary for it to make and pour concrete for the Project.   Burnell would promise to work on the Project but would not show up and would instead work on other projects.   Burnell would use materials earmarked for the Project on other projects.

In an effort to assist Burnell and mitigate its damages, PCL performed, and hired other subcontractors to perform, work that Burnell was contracted to perform.

Burnell finished its work on the Project on September 4, 2018. Burnell's work was required

to be completed at least 35 days in advance of the Project's completion date because PCL had approximately 35 days of successor activity that needed to be performed after Burnell completed its work in order for the Project to reach completion.

The final contractual completion date for the Project was August 23, 2018.  However, because Burnell failed to complete its work until September 4, 2018, the Project was delayed and was not completed until 35 days later, October 9, 2018.

Liquidated damages in the amount of $10,000 per day were assessed against PCL by the LADOTD for 47 days, from August 23, 2018 (the final contractual completion date), through October 9, 2018 (the actual completion date), for a total of $470,000, when the facility was fully open for traffic. The LADOTD stopped charging Liquidated Damages after October 9, 2018.

PCL additionally incurred expenses for increased overhead during the period the Project was delayed.

## II.    CONCLUSIONS OF LAW

### A.    Jurisdiction

This Court is vested with jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of costs and interest, and there is complete diversity of citizenship between PCL and F.J. Burnell.

### B.    Burnell's Breach of its Subcontract

The Subcontract between PCL and Burnell is the law between PCL and Burnell and provides the exclusive rights and obligations between the two parties. LA. CIV. CODE art. 1983. The existence and meaning of a contract's terms are determined by the parties' mutual intentions at the time of contracting. The Court need not look beyond the four corners of the contract to

determine the mutual intent of the parties. LA. CIV. CODE arts 2045-2053; *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co*., 93-0911 (La. 1/14/94); 630 So. 2d 759, 764; *Ransom v. Camcraft, Inc.,* 580 So. 2d 1073 (La. App. 4 Cir. 1991); *Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co*., 89 F.3d 243, 246 (5th Cir.1996).

The Uniform Special Conditions to Subcontract were incorporated and made part of the Subcontract.   Article IV of the Uniform Special conditions provided:

- Time was of the essence and any time specified for completion of the Subcontract is a material provision of the Subcontract;

- Burnell was required to furnish sufficient labor, materials and equipment to assure proper performance of the Subcontract Work in strict compliance with all performance schedules;

- Burnell was required to promptly increase its work force, accelerate its performance, work overtime, and work Saturdays, Sundays and holidays, all without additional compensation, if, as reasonably determined by Contractor, such work is necessary as a result of Burnell's failure or inability to maintain the current Project schedule due to Subcontractor's own defective or deficient work or other nonperformance; and

- Burnell was required to commence, continue, and complete the Subcontract Work so as not to delay completion of the Project or any portions thereof, including portions to be performed by others.

The Court has considered the evidence at trial and concludes that Burnell breached the Subcontract by failing to furnish sufficient labor, materials, and equipment to assure proper performance of the work it had undertaken.   Burnell further ignored or was indifferent to PCL's repeated notifications that Burnell was not meeting its performance requirements and that Burnell was on the critical path.

Burnell failed to increase its work force, accelerate its performance, work overtime and

8

work weekends, as it was required to do under the terms of the Subcontract in order to meet the contract completion deadline.   Additionally, Burnell breached the Subcontract by not commencing, continuing, and completing the Subcontract Work so as not to delay completion of the Project, including portions to be performed by other Subcontractors.

Burnell asserted that there were multiple causes for delay on the Project for which it was not solely responsible.   Burnell contended that weather delays and flooding early in the project were responsible for delays.   However, the evidence at trial showed that the LADOTD granted extensions for these delays, and that Burnell received the benefit of each extension.   Burnell further contended that other Subcontractors cause delays.   Again, Burnell failed to prove by a preponderance of the evidence that anyone, other than itself, was responsible for the delays. Burnell additionally contended that some days there were no areas available in which it could pour concrete.   However, PCL proved by a preponderance of the evidence that there were always areas available where Burnell could pour concrete, and Burnell produced nothing to dispute that.

In summary, the Court finds that PCL proved by a preponderance of the evidence that the contractual completion date of the Project was August 23, 2018; that the Project was not completed until October 9, 2018; that the Project was delayed and completed late; that Burnell was responsible for a total of 47 days in delays to the Project; and that PCL was damaged by Burnell's acts in delaying the Project.

The Court will next address the issues pertaining to damages.

## C.    Damages

A breach of an obligation occurs when one party fails to perform its obligations. LA. CIV.

9

CODE art. 1994.   An obligor is liable for the damages caused by his failure to perform a conventional obligation. LA. CIV. CODE art. 1994.   A failure to perform results from nonperformance, defective performance, or delays in performance. LA. CIV. CODE art. 1994.

Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived. LA. CIV. CODE art. 1995.

Damages due for breach of contract are those that may reasonably be considered as arising from the natural and proximate consequences of the breach. Damages can be proven if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result is only approximate. Under Louisiana law, actual damages must be proven; they cannot be speculative or conjectural. Evidence of damages must furnish data for a reasonably accurate estimate of the amount of damages such that it appears reasonably evident that the amount of damages allowed rests upon a certain basis. *In re Liljeberg Enterprises, Inc.,* 304 F.3d 410, 447–48 (5th Cir. 2002); *Nat Harrison Assocs., Inc. v. Gulf States Utils. Co*., 491 F.2d 578, 587 (5th Cir.1974).

### 1.    Liquidated Damages

Under Article I of the Uniform Special conditions, Burnell is responsible to PCL for any loss or damage to PCL by reason of Burnell's failure to perform its work in accordance with the terms of the Subcontract.   Pursuant to Article IV of the Uniform Special conditions, time was of the essence and any time specified for completion of the Subcontract is a material provision of the Subcontract.   Pursuant to Article IV of the Uniform Special conditions, Burnell is liable for all actual damages suffered by PCL as a result of Burnell failure to comply, including, that portion of any liquidated damages payable by PCL to LADOTD pursuant to the Prime Contract

10

and reasonably attributable to Subcontractor's failure to comply.

The parties stipulated that Liquidated Damages in the amount of $10,000 per day were assessed by the LADOTD against PCL for 47 days of delay, from August 23, 2018 through October 9, 2018, when the facility was fully open for traffic.

The Court finds that, but for Burnell's breach of the Subcontract, the Project would have been completed by August 23, 2018.   Therefore, PCL is entitled to judgment against Burnell in the amount of $470,000 for the Liquidated Damages that were assessed by LADOTD against PCL.

### 2.    Overhead Damages

PCL contends that, but for Burnell's failures to complete the Subcontract Work in accordance with its requirements under the Subcontract, PCL would have finished the Project on July 31, 2018, *before* the final contractual completion date of August 23, 2018. PCL contends that Burnell is therefore liable to PCL for its increased overhead for the 70 days between July 31, 2018 and October 9, 2018 (at $11,951.01 per day) for a total of $836,570.70.   PCL calculates its daily overhead during the delay period to be $10,392.19, plus a 15% markup for home office overhead, which totals $11,951.01.

In support, PCL presented the testimony of Dr. Jerry Householder, who was accepted by the Court as an expert in the fields of general contracting and construction, concrete paving, scheduling, CPM scheduling, construction delays, and damages. Dr. Householder testified that PCL incurred increased overhead for the 70-day period at the above rates, although he admitted that a 15% markup might be "a little high."

In opposition, Burnell presented the testimony of Daryl C. Ivy, who was accepted by the

11

Court as an expert in the fields of civil engineering and construction scheduling.   Ivy testified that the $11,951.01 figure was much too high to justify "baby-sitting" one Subcontractor during the waning days of the Project.   He suggested a figure of $2,500.00 per day would be reasonable but admitted he did not look at any accounting records to arrive at that figure.

Based on the evidence produced at trial, the Court finds that PCL established by a preponderance of the evidence that the base daily overhead figure asserted by PCL, $10,392.19, is reasonable, but that PCL is entitled only to a 10% markup, making a total daily overhead of $11,431.41.

Additionally, the Court finds that PCL did not prove by a preponderance of the evidence that, but for Burnell's breach, it would have finished the Project on July 31, 2018, rather than August 23, 2018.   However, PCL did prove by a preponderance of the evidence that it would have finished the Project by August 23, 2018, but for Burnell's breach.   Therefore, PCL did incur a daily overhead for the 47-day period from August 23, 2018, through October 9, 2018, for which Burnell is responsible.   This results in a total overhead damage figure of $537,276.27 (47 days x $11,431.41).

Accordingly, PCL is entitled to a damage award of $1,007,276.27 ($470,000.00 plus $537,276.27).

## D.    ATTORNEYS' FEES

As indicated above, the Court previously stated it would consider the issue of attorneys' fees after the trial.   Accordingly, no later than fourteen (14) days from the date of this Opinion and Judgment, PCL shall file a memorandum and accompanying evidence in support of its request

for attorneys' fees.[2]   Burrell shall have fourteen (14) days from the date PCL files its memorandum and evidence to file an opposition memorandum.   The Court will then make a determination as to attorneys' fees.

## III.   CONCLUSION

For the foregoing reasons, the Court finds that PCL is entitled to judgment against Burnell in the amount of $1,007,276.27. Accordingly, Judgment shall be entered in favor of PCL and against Burnell, for that amount.

MONROE, LOUISIANA, this 14th day of July, 2020.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE

---

2 *See* LR 54.2.